**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JOHN MICHAEL REDUS, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 U.S.C. § 216(b),** | |
| *Plaintiff*, | |
| v. | **Civil Action No. 3:15-cv-2364** |
| **CSPH, INC. d/b/a DOMINO'S PIZZA** *Defendants*. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Respectfully submitted,

/s/ *J. Derek Braziel*
**J. DEREK BRAZIEL**
Attorney-in-Charge
State Bar No. 00793380
**J. FORESTER**
Texas Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400
(214) 749-1010 fax

and

**WEINHAUS & POTASHNICK**
Mark A. Potashnick, E.D. Mo. # 41315MO
(*pro hac vice* application forthcoming)
11500 Olive Boulevard., Suite 133
St. Louis, Missouri 63141
Telephone:     (314) 997-9150
Facsimile:     (314) 997-9170

markp@wp-attorneys.com

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing document was electronically filed.  Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

<u>/s/ J. Derek Braziel</u>
**J. DEREK BRAZIEL**

## I.     <u>INTRODUCTION</u>

Defendant's Motion seeks to prohibit Plaintiff from conducting even the most basic form of case investigation (contacting and interviewing witnesses) by repeatedly and inexplicably casting Plaintiff's Investigation Letter as "solicitation."  No less than 18 times is some form of the word "solicit" used in Defendant's brief.  Perhaps Defendant hopes this Court will be duped by the Leninesque tactic that "a lie told often enough becomes truth."  Maybe this explains Defendant's utter failure to address the express terms of the communication which clearly indicate an intent to gather information and never once suggest the recipient can or should hire Plaintiff's counsel.  As set forth below, Plaintiff's communication is not an impermissible solicitation and courts, including those in this district, have routinely permitted this type of communication.

## II.    <u>ARGUMENTS AND AUTHORITIES</u>

### A.  <u>The Investigation Letter is Not a Solicitation And is Permitted</u>

The underlying premise of Defendant's Motion is that the January 3, 2017, e-mail ("Investigation Letter") somehow constitutes improper solicitation.  It does not.  Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, relied on by Defendant, provides that "[a] lawyer shall not . . . seek professional employment" through prohibited communications "when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain."  Similarly, Rule 7.05(a)(3) as represented by Defendant, prohibits false or misleading communications made "for the purpose of obtaining professional employment."  Defendant has put forth no argument and no evidence that the motive for the Investigation Letter is professional employment by Plaintiff's counsel, that Plaintiff's counsel did so for his own gain, or has made false or misleading statements.  By contrast, the Investigation Letter begins with "[w]e are writing to get your help with our ongoing minimum wage investigation . . . ."  More specifically, the Investigation Letter

explains that "we need your help to confirm whether our clients' understanding of the pay structure is correct and whether it broadly applied to other delivery drivers or, instead, was a limited practice."[1]  The letter asks the recipient to "help us out by contacting us about your experience at Domino's" and explains what information is being sought: "[s]pecifically, we'd like to ask you a few questions about your pay and job duties to confirm the existence and scope of these practices." Defendant has not pointed to any language in the Investigation Letter that even remotely suggests it is solicitation.[2]

As further explained below, a similar charge of improper solicitation was lodged against a similar investigation letters in *Mendez v. Enecon Ne. Applied Polymer Sys., Inc.,* 2015 WL 4249219 (E.D.N.Y. July 13, 2015) and *Cooper v. E. Coast Assemblers, Inc.,* No. 12-80995-CIV, 2013 WL 308880, at *5 (S.D. Fla. Jan. 25, 2013).  The *Mendez* and *Cooper* courts determined that the stated purpose of the similar letter was investigatory in nature and not designed to solicit putative claimants to join a legal action.  *Id.*  Given the language in Plaintiff's Investigation Letter setting forth the purpose of the communication, this Court should similarly find the communication is not a solicitation.

If there is any doubt that Plaintiff's counsel knows the difference between a solicitation letter and an investigation letter, the Court is invited to compare a solicitation letter, used in a

---

[1]    Domino's has denied from the beginning of the case through its recent briefing that any individuals are similarly situated to Plaintiff Redus.  In fact, Defendant refused to produce the identities of other individuals who worked in the same position as Redus during discovery and then highlighted the limited number of participants in its opposition to conditional certification.

[2]    Additionally, it is not clear that the Investigation Letter, which was sent as an email, qualifies as "other electronic contact" as that phrase was intended by Rule 7.03.  Section (f) and comment 1 of that Rule preclude electronic contacts that present the same damagers as one-on-one contact with an attorney might raise.  Comment 1 states "Thus, forms of electronic communications are prohibited that pose comparable dangers to face-to-face solicitations, such as soliciting business in "chat rooms," or transmitting an unsolicited, interactive communication to a prospective client that, when accessed, puts the recipient in direct contact with another person. Those that do not present such opportunities for abuse, such as pre-recorded telephone messages requiring a separate return call to speak to or retain an attorney, or websites that must be accessed by an interested person and that provide relevant and truthful information concerning a lawyer or law firm, are permitted."  An email is analogous to a pre-recorded message that would require the recipient to initiate a separate return email to speak to an attorney.

different case by Plaintiff's counsel and submitted to the State Bar for review, with the Investigation Letter at issue.  Attached as Exhibit A.  The letter was sent with a Consent to Join form which, when completed and filed, joined the individual to the litigation as a participant.  The solicitation letter talks about the eligibility of the recipient to join the case, tells him/her how to do so, explains the recipient's rights, and provides a form to join the case.  None of these elements are present in the Investigation Letter.  The Court should find the Investigation Letter is not an improper solicitation and deny the Motion.

### B.  Plaintiffs Have a Right to Communicate With Potential Class Members

Contrary to Defendant's unsupported legal conclusions, "[p]re-certification communications to potential class members… are generally permitted, and also considered to constitute constitutionally protected speech." *Mevorah v. Wells Fargo Home Mortgage*, Inc., 2005 WL 4813532, at \*3 (N.D. Cal. Nov.17, 2005).  Indeed, courts have routinely held that pre-certification and pre-notice communication is authorized, and should not be unnecessarily restricted.  *See, e.g., Frye v. Baptist Memorial Hosp*., Inc., 2008 WL 2117264, at \*5 (W.D. Tenn. May 20, 2008) (denying the Defendants' motion requesting that the plaintiffs' counsel cease and desist sending communications to putative collective action members); *Piper v. RGB Inventory Spec, Inc*., 2007 WL 1690887, at \*8 (N.D. Cal. June 11, 2007) (holding that the plaintiffs' website needed to be updated but did not justify other limitations on communications with putative collective action members); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342-43 (N.D. Ga. 2007) (holding that it would be an abuse of discretion to totally prohibit plaintiffs from communicating with putative collective action members through a website or other means).  Although the Investigation Letter is not a solicitation, it is noteworthy that the same First Amendment protection likewise applies to solicitations of professional services.  *See, e.g.,Rubery*

*v. Buth-Na-Bodhaige, Inc.*, 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007) ("[I]t is well settled that attorney advertisements such as the Letter Notice [sent by plaintiffs' counsel to putative collective action members] are protected by the First Amendment, so long as they are 'not false or deceptive and [do] not concern unlawful activities.'"); *Vogt v. Texas Instr., Inc.*, 2006 WL 4660133 (N.D. Tex. Aug. 8, 2006) (Lindsay, J) (finding advertisement letters were not misleading and not a communication that warranted court intervention prior to conditional certification); *Kalish v. High Tech Inst*, 2005 WL 1073645, at *4 (D. Minn. Apr. 22, 2005) (finding that the advertisement letters sent by plaintiffs' counsel to potential collective action members were permissible and were not "notice").

"[P]laintiffs generally have a right to contact members of the putative class," to conduct discovery. *See Dziennik v. Sealift, Inc.*, No. 05 CV 4659, 2006 WL 1455464, at *2 (E.D.N.Y. May 23, 2006) (citing *Williams v. Chartwell Financial Servs., Ltd*., 204 F.3d 748, 759 (7th Cir.2000)). As one district court has stated, "[b]oth parties need to be able to communicate with putative class members-if only to engage in discovery regarding issues relevant to class certification-from the earliest stages of class litigation.... District courts thus must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary." *Austen v. Catterton Partners*, 831 F.Supp.2d 559, 567 (D.Conn.2011) (emphasis in original); *accord Brown v. Mustang Sally's Spirits and Grill, Inc*., 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012).

### C. The Court Would Commit Reversible Error by Limiting Plaintiff's Communications With Putative Class Members in The Absence of Any Evidence of Improper Communications

While the Court has the authority to control communications to putative collective members, there is nothing close to misleading or coercive in Plaintiff's Investigation Letter warranting the Court's involvement.  A "district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Nevertheless, a district court's discretion in this area is not unlimited. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). The Supreme Court recognizes that plaintiffs have a right to contact members of the putative class, and any discovery limitations should be carefully drawn.  *Id.*, 452 U.S. at 104, 101 S. Ct. 2193.

The district court's determination whether or not to grant a protective order must involve a careful balancing of the potential for abuse created by the class action and the right of the plaintiffs to contact potential class members. *Id.*  Because this balancing is involved, and because this area involves important competing concerns, "an order limiting discovery communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101, 101 S.Ct. 2193; *Williams v. Chartwell Fin. Servs.*, Ltd., 204 F.3d 748, 759 (7th Cir. 2000) (noting that plaintiffs "have a right to contact members of the putative class" and vacating protective order because the record only showed the "district court's concern over the impact of plaintiff's contact with class members on" defendant's business).

"[T]he mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Gulf Oil*, 452 U.S. at 104; *Dziennik v. Sealift, Inc.*, No. 05 CV 4659, 2006 WL 1455464, at *2 (E.D.N.Y. May 23, 2006) (noting that "plaintiffs generally have a right to contact

members of the putative class and holding "that the vague emails submitted by defendants are insufficient to support findings of need for a limitation that would outweigh the class members' rights"). "Both parties need to be able to communicate with putative class members - if only to engage in discovery regarding issues relevant to class certification - from the earliest stages of class litigation.... District courts thus must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary." *Austen v. Catterton Partners*, 831 F. Supp. 2d 559, 567 (D.Conn.2011).

Here, there is no evidence on which the Court can make a clear record or specific findings warranting what amounts to a prior restraint on Plaintiff's First Amendment rights. There is no affidavit from anyone saying they were misled, lied to, or coerced by the Investigation Letter. Defendant does not identify any language in the Investigation Letter which is misleading, untruthful, or coercive to the reader of the letter. Defendant merely attempts to know Plaintiff's counsel's thoughts and motivation. However, as this District and numerous other courts hold, such "evidence" [sic] of state of mind and motivation is highly improper, inadmissible and unreliable. *See, e.g., Green v. CBS Broad., Inc.,* 2000 U.S. Dist. LEXIS 19962, *9 (N.D. Tex. Dec. 19, 2000) (finding that testimony about another person's state of mind is inadmissible because it relies on speculation rather than personal knowledge); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1544 (10th Cir. 1995) (impressions of others' state of mind are inadmissible because they are not based on personal knowledge of any statement that person may have made); *Spurlock v. Fox*, 2010 U.S. Dist. LEXIS 100366, *60 (M.D. Tenn. Sept. 23, 2010) (finding that an opinion about the state of mind of a task force is not based on personal knowledge and is therefore speculative and inadmissible) (citing Fed. R. Evid. 701); *Schermer v. City of Bella Villa,* 2009 WL 690186, *3 (E.D. Mo. Mar. 10, 2009) (testimony regarding what a police officer was thinking is inadmissible

because it constitutes mere speculation); *Schuller v. Great-West Life & Annuity Ins. Co.*, 2005 U.S. Dist. LEXIS 37264, *10 (N.D. Iowa Sept. 15, 2005) (patient is not competent to testify to his doctor's state of mind or what the doctor believed); *Plunkett v. Merck & Co.,* 401 F.Supp.2d 565, 595 (E.D. La. 2005) (expert may not testify to what defendant was thinking); *Fenje v. Feld*, 301 F.Supp.2d 781, 815-16 (N.D. Ill. Dec. 8, 2003) ("A witness may testify as to his or her own state of mind.  As to other persons, the witness generally may only testify as to another person's statements or conduct (to the extent not inadmissible hearsay), but not as to the other person's actual state of mind."); *Fritzsche v. Albuquerque Mun. Sch. Dist.*, 194 F.Supp.2d 1194, 1203 (D.N.M. 2002) (impression about others' state of mind is inadmissible).

In sum, the best that Defendant can manufacture is its argument that, **IF** it is true that the letter was intended to solicit, then the statements concerning investigation are misleading.  Here again, there is no evidence to support the baseless predicate of Defendant's argument.

Defendant attempts to raise the timing of the Investigation Letter as some form of evidence about the letter's true intent.[3]  The timing of the Investigation Letter is easily explained.  Plaintiff's counsel did not have the information to send the Investigation Letter until December 29, 2016.  With the holidays and family obligations, the letter did not go out until January 3, 2017.  It should not be a surprise to Defendant that Plaintiff continues to investigate his case and will do so through the close of all discovery.  Plaintiff's counsel is obligated to zealously represent Plaintiff in his claims and continuing to investigate whether there are witnesses who can support Plaintiff's claims is part of that effort.  The timing of the Investigation Letter is a function of data acquisition and is not evidence of a plot to solicit.

---

[3]     Defendant repeatedly shouts about there being 15 months of discovery.  However, what Defendant does not say is that the discovery period was extended by agreement of the parties based on their mutual obligations in other courts and in other cases.  The amount of discovery conducted was limited and was even more circumscribed by Defendant's refusal to produce witness names as requested.

**D. Investigation Letters Similar to Plaintiff's Investigation Letter Have Been Upheld.**

Courts examining investigation letters similar to Plaintiff's Investigation Letter have found them permissible and denied defendants' efforts to halt them.  In *Mendez v. Enecon Ne. Applied Polymer Sys., Inc.,* the court considered the following letter:

Dear Enecon Northeast Applied Polymer Systems, Inc. Employee:

Our office represents Plaintiff Matthew Mendez in the above-referenced matter. Mr. Mendez is a former employee of Enecon Northeast Applied Polymer Systems, Inc. ("Enecon"). This employee has brought a lawsuit in federal court for Enecon's alleged violations of numerous provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). This employee brought the lawsuit on behalf of both himself and other nonmanagerial employees working for Enecon. We are currently investigating this employee's claims by speaking with other Enecon employees to determine if they have any information that support[s]

Mr. Mendez's claims. This is the reason why we would like to speak with you.

Mr. Mendez alleges, among other things, that Enecon violated the minimum wage and overtime provisions of the FLSA and the NYLL due to Enecon's failure to compensate its employees for hours worked while traveling to and from each job site.

If you have any information regarding any of the violations that Mr. Mendez alleges Enecon committed as mentioned in this letter, we would like to speak with you. You can feel free to give me a call at any time at (516) 248–5550 to discuss these issues further.

Respectfully,

Anthony P. Malecki *For the Firm*

No. CV 14-6736 ADS AKT, 2015 WL 4249219, at *1 (E.D.N.Y. July 13, 2015).  The *Mendez* court reviewed the letter in light of the applicable standards under *Gulf Oil* and other cases and found the communication permissible.  The same result was reached in *Cooper v. E. Coast Assemblers, Inc.,* where the court found an investigation letter was not an improper solicitation and held that such an investigation letter is "communication between counsel and unrepresented

former or current employees who are putative class members [and] is not improper. No. 12-80995-CIV, 2013 WL 308880, at *5 (S.D. Fla. Jan. 25, 2013).

Finally, as the *Mendez* court notes, the American Bar Association has issued a formal opinion regarding a lawyer's ethical obligations when communicating with putative class members during the period between filing a class action lawsuit and class certification. *See* ABA Formal Op. 07–445 (2007). The opinion states, in part:

> Both plaintiffs' counsel and defense counsel have legitimate need to reach out to potential class members regarding the facts that are the subject of the potential class action, including information that may be relevant to whether or not a class should be certified. With respect to such contacts, Rule 4.3, which concerns lawyers dealing with unrepresented persons, does not limit factual inquiries but requires both sides to refrain from giving legal advice other than advice to engage counsel, if warranted. If, on the other hand, plaintiffs' counsel's goal is to seek to represent the putative class member directly as a named party to the action or otherwise, the provisions of Rule 7.3, which governs lawyers' direct contact with prospective clients, applies.... **However, Rule 7.3's restrictions do not apply to contacting potential class members as witnesses, so long as those contacts are appropriate and comport with the Model Rules [of Professional Conduct].**

*Id.* (emphasis added, footnote omitted). The Mendez court noted that a sister court recently denied a motion which concerned the same letter at issue in Mendez (set forth above) on the grounds that it did not violate ABA Formal Op. 07–445. *Mendez,* at *3.

### E. The Investigation Letter Does Not Preclude Plaintiffs' Right to Notice.

Finally, although not at precisely at issue in this Motion, Defendant contends the Court should deny conditional certification because of Plaintiff's Investigation Letter. This Court has repeatedly held that pre-certification communications do not foreclose an individual's right to judicial notice.[4]   Failing to present any legal analysis in support of its Motion, Defendant

---

[4]      *Vogt*; *Behnken v. Luminant Min. Co., LLC,* (Fitzwater, J.) 997 F. Supp. 2d 511, 519-23 (N.D. Tex. 2014)(court rejecting similar concerns that individuals had been notified prior to notice); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012) (Ramirez, J.), *report and recommendation adopted,* No. 3:11-CV-2743-O, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (O' Conner, J.).

incorrectly asserts that there are added "layers" of limitations that apply during the pre-certification period to plaintiff or plaintiff's counsel's speech.[5]  Judge Lindsay flatly rejected this assertion in *Vogt v. Texas Instruments Inc.*, No. CIVA 3:05CV2244 L, 2006 WL 4660133, at *2–13 (N.D. Tex. Aug. 8, 2006), "Since court-authorized notification is discretionary, and potential class members are not included as party plaintiffs in the collective action unless they affirmatively opt-in, courts should not *per se* prohibit precertification communications." *see also Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342–44 (N.D. Ga. 2007) ("Courts have been mindful not to run afoul of plaintiffs' and their lawyers' free speech rights in their restrictions of pre-notice communications."); *Tucker v. Labor Leasing,* 872 F. Supp. 941, 949 (M.D.Fla.1994) ("[section] 216(b) does not require parties to obtain judicial approval before seeking to locate other 'similarly situated' persons ... <u>it is not the court's role to prohibit plaintiffs from attempting to gather these consents.</u>").[6]

In *Vogt*, Judge Lindsay found that while post-certification communications might disrupt the supervised notice period, the pre-certification communications by plaintiff's counsel did not. "Since the court has yet to conditionally certify a class or authorize a section 216(b) notice, Plaintiffs' counsel, unlike the defendant in *Belt*,[7] cannot be said to have disregarded or subverted a court directive relating to its administration of the collective action."  There, Plaintiff's counsel sent out a pre-certification attorney advertisement that explained:

> "The purpose of this Notification is to inform you of the existence of a collective action lawsuit in which you are potentially eligible to participate because you may be "similarly situated" to the named Plaintiffs. This Notification is also intended to advise you how your rights under the federal Fair Labor Standards Act ... may be affected by this lawsuit, and to instruct you on the procedure for participating in this suit, should you decide that it is appropriate and you choose to do so."

---

[5]      *See* Motion at 1.
[6]      *And, Behnken v. Luminant Min. Co., LLC,* (Fitzwater, J.) 997 F. Supp. 2d 511, 519-23 (N.D. Tex. 2014) (court rejecting similar argument that pre-notice knowledge of the case precluded court-authorized notice period).
[7]      *Belt v. EmCare Inc.,* 299 F. Supp. 2d 664 (E.D. Tex. 2003).

Even though the lawyers in *Vogt* actually sent an advertisement that was explicitly designed to recruit additional plaintiffs, Judge Lindsay held quite clearly that the communication "**was not an improper attempt to, and did not, undermine the collective action**."

This District has already rejected Defendant's exact same argument that pre-certification communications somehow preclude the Court from authorizing and supervising a notice process. Applying this law to Defendant's unsubstantiated complaints regarding Plaintiff's Investigation Letter, there is no basis in law or fact for the Court to reach a unique conclusion here. The Motion should be denied.

### III.   CONCLUSION

Plaintiff's Investigation Letter is just that – an investigation letter.   It is permitted communication between Plaintiff's counsel and potential witnesses in the case.   The letter does not ask the recipient to join the case and does not seek professional employment.   As such, it is not an improper solicitation.   The language in the communication satisfies the *Gulf Oil* concerns and Defendant has produced no evidence to the contrary.   Therefore, the Court should deny the Motion.