IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN MICHAEL REDUS, on behalf of §
himself and others similarly-situated, §
                                      §
            Plaintiff,                §
                                      §
V.                                    §        No. 3:15-cv-2364-M
                                      §
CSPH, INC., doing business as Domino's §
Pizza,                                §
                                      §
            Defendant.                §

## MEMORANDUM OPINION AND ORDER[1]

Defendant CSPH, Inc., d/b/a Domino's Pizza, filed a Motion for Protective Order

under Federal Rule of Civil Procedure 26(c)(1), *see* Dkt. No. 32 (the "MPO"), which

Chief Judge Barbara M. G. Lynn has referred to the undersigned United States

magistrate judge for hearing, if necessary, and determination pursuant to 28 U.S.C.

§ 636(b), *see* Dkt. No. 36.

In a February 28, 2017 Memorandum Opinion and Order, the Court granted in

part and denied in part the MPO and ordered "– consistent with the limitations set by

the Court's First Phase of Scheduling Order Regarding Bifurcated Discovery [Dkt. No.

12], as later amended, *see* Dkt. No. 14; Dkt. No. 19 – that Plaintiff John Michael Redus

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

and his counsel will not, without further court authorization, communicate with potential class members to investigate or otherwise obtain discovery on the merits on Redus's claims or on the issue of whether this case is appropriate for litigation as a collective action under the Fair Labor Standards Act, until the Court rules on his Motion for Conditional Certification." Dkt. 50 at 6-7.

The Court explained that,

[a]s amended effective December 1, 2015, Rule 26(c)(1) authorizes a protective order, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and

internal quotation marks omitted); *see also id.* at 564 ("Rule 26(d) gives that court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)).

This Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

CSPH seeks a Rule 26(c)(1) protective order "to prevent the Plaintiff from undermining the Court's prerogative, as defined by the [Fair Labor Standards Act's] legislative proscriptions, to determine whether his November 30, 2016 Motion for Notice to Potential Plaintiffs and for Certification should be granted, and the form, method, and means for issuing any such Notice" and "preventing the Plaintiff from seeking putative class members unless and until the Court makes a ruling on his November 30, 2016 Motion." Dkt. No. 32 at 8. CSPH contends that "Plaintiff has attempted to unilaterally usurp this Court's power to authorize if, how and when any notice is given to prospective class members by emailing solicitations to current CSPH delivery drivers as late as January 3, 2017" and that "Plaintiff should not be allowed to circumvent the judicial process in place to obtain conditional certification by disseminating email solicitations to prospective clients prematurely." *Id.* at 2. "Accordingly, CSPH requests that the Court grant its Motion for a Protective Order, thereby limiting any communicating with and soliciting to prospective party plaintiffs unless and until permitted by the Court to do so following a ruling on the merits of his Motion for Notice to Potential Plaintiffs and for Conditional Certification ('the Motion') filed on November 30, 2016." *Id.*

Redus responds that his counsel knows the difference between communications for case investigation and a solicitation letter and that the MPO "seeks to prohibit Plaintiff from conducting even the most basic form of case investigation (contacting and interviewing witnesses) by repeatedly and inexplicably casting Plaintiff's Investigation Letter as 'solicitation.'" Dkt. No. 44 at 3-5. According to Redus, "the express terms of the [January 3, 2017] communication ... clearly indicate an intent to gather information and never once suggest the recipient can or should hire Plaintiff's counsel," and "Plaintiff's communication is not an impermissible solicitation and courts, including those in this district, have routinely permitted this type of communication." *Id.* at 3.

CSPH replies that Redus's response "fails to address the actual issues raised by CSPH in its [MPO], to divert the Court's attention from the real issue at play: that Plaintiff's claims fail as a matter of law." Dkt. No. 48 at 1. CSPH explains that it "seeks this Court's protection to

prevent the Plaintiff from prematurely soliciting potential class members until a ruling on his Motion for Notice to Potential Plaintiffs and for Conditional Certification" and does so "to safeguard the integrity of the judicial process and provide a fair and balanced system to prosecute and defend this lawsuit," where "Plaintiff should not be permitted to usurp this Court's authority by preempting its decision whether conditional certification should be granted, and the scope thereof," or "permitted to violate the Texas Disciplinary Rules of Professional Conduct in a manner that attempts to give his client an unfair advantage, further limiting CSPH's ability to defend his claims against it." *Id.* at 1-2.

CSPH makes clear that it is seeking a protective order under Rule 26(c) and distinguishes other cases on that basis. *See id.* at 3. CSPH explains that it seeks an order "to prevent counsel from soliciting putative class members before the Court rules on the Motion for Conditional Certification"; that "CSPH has not, and does not seek an overall ban on Plaintiff's counsel's communications with anyone"; and that the issue raised in the MPO "is whether counsel for Plaintiff can solicit putative class members before the Court's decision on his own Motion for Conditional Certification, in order to protect CSPH's ability to fairly defend itself in this lawsuit." *Id.* And, CSPH disputes Redus's claim that his counsel's "January 3, 2017 email is not a solicitation because it uses the term investigation" and argues that Redus's counsel cannot be engaged in merits-based discovery because Redus has previously taken the position that merits-based discovery has yet to begin. *See id.* at 4-5. Accordingly, CSPH explains that it "seeks protection from Plaintiff's improper and unauthorized solicitation of potential class members until the Court rules on his Motion for Conditional Certification." *Id.* at 6.

Much of the briefing focuses on whether Redus's counsel is soliciting additional potential class members as clients and whether that is acceptable. But the Court is only considering a request for a Rule 26(c)(1) protective order. Such an order is, as CSPH points out, governed by the Federal Rules of Civil Procedure. As to requests for protective orders, Rule 26(c)(1) "vests in the trial court discretion over litigants' requests for protection from 'annoyance, embarrassment, oppression, or undue burden or expense' in the discovery process." *Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir. 1981). But a Rule 26(c)(1) order properly controls only information that is requested and obtained as part of the discovery process in the case pending before the Court. And, as a general matter, "once an action is filed in federal court, all discovery (including depositions) is governed by the Federal Rules of Civil Procedure." *PJC Bros., LLC v. S&S Claims Serv., Inc.*, 267 F.R.D. 199, 201 (S.D. Tex. 2010).

The January 3, 2017 email at issue does not clearly solicit

additional clients. *See* Dkt. No. 33-1. But, crediting Redus's own characterization, it was an effort to engage in additional case investigation – that is, it was a form of fact discovery focused either on the merits on Redus's claims or possibly "the issue of whether this case is appropriate for litigation as a collective action under the Fair Labor Standards Act." Dkt. No. 12 at 1. Regardless of which it is, Judge Lynn's scheduling order prohibits the parties from engaging in any discovery at this point, where, as CSPH points out, the Court has limited discovery to a first phase pending a decision on conditional certification and the period for that limited discovery has closed. *See id.* at 1-2; Dkt. No. 14; Dkt. No. 19.

*Id.* at 1-6.

Redus filed an Unopposed Motion for Extension of Time to File Rule 72(a) Objections, *see* Dkt. No. 51, which Judge Lynn granted, ordering that "Plaintiff (or Defendant if necessary) shall have until 14 days after the Court rules on Plaintiff's Motion for Reconsideration of the Court's February 28, 2017, Order to file Objections to the Order pursuant to Federal Rule of Procedure 72(a)" and "that Plaintiff shall file his Motion for Reconsideration by March 17, 2017." Dkt. No. 52 at 1. Redus then filed his Motion for Reconsideration of February 28, 2017, Order, *see* Dkt. No. 53 (the "Motion for Reconsideration"), which is now before the undersigned for determination.

In the Motion for Reconsideration, Redus contends that

[t]his Court should reconsider its February 28, 2017, Order ("Order") because it based on a misapplication of Judge Lynn's Scheduling Order and a gross misinterpretation of the Federal Rules of Civil Procedure ("FRCP"). The Order imposes a one-way gag order on Plaintiff's ability to communicate with potential witnesses or prepare his case for trial. The result is an unconstitutional prior restraint on Plaintiff's First Amendment rights, without any "specific findings" based on a "clear record," as required by the Supreme Court. Additionally, the Order is not based on any finding under Rule 26(c) that such a limit is needed to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense…." ….

Rather than address the applicable standards and make the requisite findings, the Court elected to side-step these issues and use the Court's December 31, 2015, Scheduling Order (Dkt. 12) ("Scheduling Order") as the basis of the gag order. This is clear and reversible error and the Court should reconsider, withdraw the Order, and deny the Motion for Protective Order. Plaintiff requests oral argument on this issue so it can be fully discussed with the Court because of the importance of the issue.

*Id.* at 1-2 (footnote omitted). CSPH filed a response in opposition to the Motion for Reconsideration, *see* Dkt. No. 58, and Redus filed a reply, *see* Dkt. No. 59.

CSPH also filed a Motion for Leave to File Supplemental Evidence in Support of its Motion for Protective Order, *see* Dkt. No. 57, explaining that

[i]n the event the Court reconsiders its Order, CSPH requests leave to file supplemental evidence in support of its Motion for Protective Order. In its Motion for Protection, CSPH sought protection from this Court to prevent Plaintiff from improperly communicating with and soliciting CSPH employees and putative class members until the Court ruled on Plaintiff's Motion for Notice to Potential Plaintiffs and for Conditional Certification filed on November 30, 2016. CSPH argued that the Plaintiff and its counsel improperly contacted a current CSPH employee and putative class member by email solicitation, in violation of the Federal Rules, the Court's orders and the Texas Disciplinary Rules of Professional Conduct Rules governing prospective client communication.

7.     Although the Court declined to rule on whether the email solicitation was improper communications by opposing counsel and granted the Motion for Protection on other grounds, CSPH requests leave to submit evidence that the email solicitation at issue was direct communication to a CSPH Manager without the consent of CSPH's counsel, which is also a violation of Section 4.02 of the Texas Disciplinary Rules of Professional Conduct Rules. Section 4.02 specifically prohibits a lawyer from communicating about the subject matter of the representation with a person the lawyer knows to be represented by another lawyer regarding that subject. Under Section 4.02, "organization" includes those persons presently having a managerial responsibility with an organization or those persons presently employed by such organization or entity and whose act or omission in connection with the subject of representation may make the organization or entity of government vicariously liable for such act or omission.

> 8.    Should the Court reconsider its Order dated February 28, 2017, CSPH requests leave to submit the Declaration of Joy Wilson attached hereto as Exhibit A, which demonstrates that the email at issue was sent from Plaintiff's counsel to Megan Glass, a current employee and one of CSPH's General Managers at one of its locations.

*Id.* at 1-3 (footnote omitted). Redus opposes, arguing that

> Defendant's latest (and new) argument is that Plaintiff's communications about the case must be stopped because a management employee was inadvertently contacted. Plaintiff never intended to contact any CSPH management-level employee. The first Plaintiff heard about that issue was approximately eight days ago when CSPH mentioned it for the first time. Plaintiff immediately responded that he would not contact the individual further, had no idea she was a member of management, and that he was under an ethical obligation to refrain from such contact even without a protective order. (Reply Exh. A). For such an allegedly important issue, it seems disingenuous for Defendant to alert Plaintiff to this issue after the Motion for Protective Order was adjudicated. This is the kind of issue Plaintiff should have been informed about before now and it appears as though Defendant sandbagged Plaintiff in an effort to get him to breach his ethical duties in not contacting management employees. The Court should see through Defendant's arguments and reconsider the February 28, 2017, Order.

Dkt. No. 59 at 3.

The Court heard oral argument on Plaintiff's Motion for Reconsideration of February 28, 2017, Order [Dkt. No. 53] and Defendant CSPH, Inc.'s Motion for Leave to File Supplemental Evidence in Support of its Motion for Protective Order [Dkt. No. 57] on April 24, 2017. *See* Dkt. No. 60.

The Court is now persuaded that its analysis in February 28, 2017 Amended Memorandum Opinion and Order [Dkt. No. 50] rested on a faulty premise. There is limited case law on the question of whether, under the Federal Rules of Civil Procedure, "discovery" includes informal fact investigation and witness interviews. And

many of the decisions focus on a defendant's efforts to interview a plaintiff's treating health care providers – which raises additional issues not implicated here. And, as Redus points out, a prior version of Federal Rule of Civil Procedure 26(a)(5) set forth the methods to discover additional information which were governed by the Federal Rules, but "[t]he omission of this section after 2007 was not an effort to expand the scope of the Rules to include witness interviews or other informal information gathering techniques, but was an effort to eliminate redundancy." Dkt. No. 53 at 4.

The Court is persuaded by Redus's analysis of the question:

> The linchpin predicate for the Court's Order is that Plaintiff's efforts to informally contact witnesses to investigate the case "was a form of fact discovery" under Rule 26 and "the Court has limited discovery to a first phase pending a decision on conditional certification and the period for that limited discovery has closed." Order, p. 6. A party's efforts to informally interview witnesses or obtain information from willing participants is not governed by the FRCP.
>
> The FRCP contain six main forms of discovery: depositions, interrogatories, requests to produce, requests to admit, non-party production subpoenas, independent medical examinations, site visits and product testing. What all of these have in common is that they impose a court-imposed requirement that they be responded to under penalty of contempt.
> ....
> The FRCP do not address the ability of a party to contact witnesses and potential witnesses through informal means. Unlike the limits placed on the number of depositions or the number of Interrogatories, the Rules contain no limit whatsoever on informal contacts with potential witnesses. There is no limit on how many potential witnesses can be contacted, by whom, when they can be contacted, what can be obtained from them, etc. ....
>
> The fact that informal interviews are not considered "discovery" under the FRCP is supported by the implications if the rule was otherwise. Rule 26(d) says that "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). If the Court is correct, this would mean that neither side could investigate its case after the case was filed but before a Rule 26(f)

conference. This would preclude Defendants from informally talking to witnesses to be able to file an Answer. It would preclude both sides from obtaining witness statements early in a case. In [Fair Labor Standards Act] cases, it would preclude both sides from obtaining declarations which address a motion for conditional certification filed before the Rule 26(f) conference. But as this Court well knows, such interviews occur and are used by the parties to prosecute and defend their cases well before the 26(f) meeting. Holding that informal witness interviews are "discovery" under the FRCP will preclude all litigants from investigating their cases until after the Rule 26(f) conference. This cannot be what the Court intends.

Similarly, if informal witness interviews are "discovery" under the FRCP, the Court would be telling litigants that they cannot conduct such interviews after the close of discovery but before trial. In most cases, courts set discovery deadlines. If the Court's Order remains in place such that informal interviews are "discovery" and would be affected by a discovery deadline, the Court would be creating a heretofore unannounced rule that unless a witness is interviewed before the discovery deadline, he cannot be spoken to. This would also impact trial preparation as attorneys meet with witnesses to prepare them to testify when they may have had limited contact with them before the discovery deadline. Would this new "witness interview is the same as formal discovery" rule prohibit witness preparation altogether or limit such preparation to only those specific matters discussed during the open discovery period. Here again, Plaintiff doubts the Court intends such an implication, but such would be the issue if the Court's Order stands.

*Id.* at 3-5.

The Court determines, as Redus has convincingly argued, that the term "discovery" as it is generally used in Federal Rules of Civil Procedure 26 through 37 does not generally include informally investigating facts and issues by contacting potential witnesses who are free to ignore the communication if they elect to do so, as opposed to formal discovery requests that are expressly governed by a Federal Rule and to which a party is legally required to comply.

And, most importantly, by extension, the Court is persuaded that Judge Lynn's

First Phase of Scheduling Order Regarding Bifurcated Discovery [Dkt. No. 12] did not include informal fact investigation and witness interviews in the "discovery" that the order governs. Courts generally do not consider – at least implicitly because of the concerns and unintended consequences to which Redus's analysis points – a discovery deadline or cut-off or stay to affect informal fact investigation or witness interviews. *See, e.g., Ford v. Caddo Par. Dist. Attorney's Office*, No. CV 15-0544, 2016 WL 2343903, at *3 (W.D. La. May 3, 2016) ("Finally, plaintiff argues that a discovery stay will prejudice her case because witnesses and parties will continue to age and suffer infirmities. However, plaintiff has not shown that the health of any particular defendant is precarious. Moreover, she remains free to interview non-party witnesses."); *Simstad v. Scheub*, No. 2:07-CV-407, 2014 WL 360024, at *1 (N.D. Ind. Feb. 3, 2014) ("Sawochka previously worked for the plaintiffs, but his employment ended over a decade before the interview occurred. He was not a party to the lawsuit, and the plaintiffs have presented no authority to show that it was necessary for them to be present at the interview. Rather, the Federal Rules allow an attorney to conduct such witness interviews. Furthermore, the plaintiffs have not shown that the fact discovery deadline terminates a parties' right to conduct such interviews."); *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 497 n.6 (S.D. Tex. 2009) (noting that, although the court would deny a requested extension of the discovery deadline, "nothing prevents the parties from continuing, informally, their investigations and interviews of any fact witnesses").

Nothing in Judge Lynn's scheduling order or the parties' submission, *see* Dkt.

No. 11, that led to its entry suggests or supports a conclusion that the order was intended to reach "discovery" beyond the formal discovery governed by Federal Rules 26 through 37 and 45 – and the Court concludes that it does not.

That takes the Court back to CSPH's request for a Rule 26(c)(1) protective order. At oral argument, CSPH's counsel focused on the timing of the January 3, 2017 email as the concern that prompted the MPO – and the MPO itself is focused on that. At oral argument, CSPH's counsel conceded that CSPH is not resting on an argument that the conditional certification process and informal solicitation of additional clients are mutually exclusive. And the Court does not believe that Redus's counsel engaging in communications like the January 3, 2017 email would usurp the Court's power to authorize if, how, and when any notice is given to prospective class members by emailing solicitations to current CSPH delivery drivers or circumvents the judicial process in place to obtain conditional certification by disseminating email solicitations to prospective clients prematurely.

The Court further stands by its finding that the January 3, 2017 email at issue does not clearly solicit additional clients but rather is aimed at investigating Redus's claims, even though it does not mention Redus or this case by name. For that matter, CSPH has not shown that the email is improper even if it was a solicitation, and CSPH's counsel made clear at oral argument that they do not contend that Redus's counsel has engaged in unethical conduct in sending the email, even as it – without Redus's counsel's knowledge at the time – went to a manager.

The Court finds, on this record, no need for an order limiting Redus's counsel's

-11-

ability to communicate with any absent class members to avoid communications that have been or are likely or threatened to be, for example, misleading, coercive, an attempt to undermine the collective action process, or otherwise abusive and a threat to the proper functioning of this litigation. *See, e.g.*, *Vogt v. Tex. Instruments Inc.*, No. 3:05-cv-2244-L, 2006 WL 4660133, at *2-*3 (N.D. Tex. Aug. 8, 2006); *see also Jaso v. Bulldog Connection Specialists LLC*, No. 2:15-cv-269, 2015 WL 11144603, at *6-*7 (S.D. Tex. Oct. 15, 2015); *Garcia v. TWC Admin., LLC*, No. SA:14-cv-985-DAE, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015). The January 3, 2017 email did not supplant or preempt any notice that the Court may order where, as Redus points out, it "did not inform individuals about their individual right to pursue overtime claims" and "[t]he recipients were not told how to join the litigation, even if they wanted to do so." Dkt. No. 59 at 2-3.

The Court has considered the supplemental evidence in support of the MPO but determines that it does not change the outcome. Even where the January 3, 2017 email was inadvertently sent to a manager, CSPH has not met its burden to establish good cause for a Rule 26(c)(1) protective order based on a specific need to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

And a protective order is not warranted by CSPH's contention that the Motion for Reconsideration "is yet another attempt to distract the Court from the focal issue before the Court: his claims fail as a matter of law." Dkt. No. 58 at 1. The Court does not generally decide formal discovery matters – much less informal fact investigation matters – based on another party's "'strong belief in the merits of [the party's]

litigation positions.'" *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) (quoting *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012)). Put another way in this particular context, a Rule 26(c)(1) protective order cannot properly be granted based on CSPH's belief that Judge Lynn will deny conditional certification and will conclude that Redus's claim fails as a matter of law, on CSPH's preference to enjoy the benefit of that expected victory without the complication of another plaintiff with a better claim coming on board, or on CSPH's speculation that Redus's counsel is "searching for additional putative class members and/or replacement class representatives who can better sustain the current allegations against CSPH." Dkt. No. 58 at 1; *cf. Jaso*, 2015 WL 11144603, at *7 ("Because the Court must make specific findings based on a clear record that a particular form of communication has occurred or is threatened to occur, speculation does not, without more, entitle an FLSA plaintiff to a protective order restricting an employer's communications with members of the potential opt-in class.").

Without the violation of Judge Lynn's scheduling order that the Court previously believed had occurred, CSPH has not met its burden to establish the propriety of or need for the order that its seeks. Accordingly, the Court GRANTS Plaintiff's Motion for Reconsideration of February 28, 2017, Order [Dkt. No. 53] and Defendant CSPH, Inc.'s Motion for Leave to File Supplemental Evidence in Support of its Motion for Protective Order [Dkt. No. 57]; VACATES the Court's February 28, 2017 Amended Memorandum Opinion and Order [Dkt. No. 50]; DENIES Defendant CSPH, Inc.'s Motion for Protective Order [Dkt. No. 32]; and ORDERS that, considering all of the circumstances

-13-

here and the Court's ruling above, the parties will bear their own expenses, including

attorneys' fees, in connection with Defendant CSPH, Inc.'s Motion for Protective Order

[Dkt. No. 32], Plaintiff's Motion for Reconsideration of February 28, 2017, Order [Dkt.

No. 53], and Defendant CSPH, Inc.'s Motion for Leave to File Supplemental Evidence

in Support of its Motion for Protective Order [Dkt. No. 57]

      SO ORDERED.

      DATED: May 15, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE